IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **HANCOCK MEDICAL CENTER** | § | **PLAINTIFF** |
| | § | |
| v. | § | **CIVIL NO.: 1:14cv55-HSO-RHW** |
| | § | |
| **QUORUM HEALTH RESOURCES, LLC** | § | **DEFENDANT** |

### MEMORANDUM OPINION AND ORDER GRANTING [24] MOTION TO STAY AND MOTION TO COMPEL ARBITRATION, DENYING AS MOOT [14] MOTION FOR PARTIAL SUMMARY JUDGMENT, COMPELLING ARBITRATION, AND STAYING CASE PENDING ARBITRATOR'S RESOLUTION OF ARBITRABILITY

BEFORE THE COURT are the Motion for Partial Summary Judgment [14] filed by Plaintiff Hancock Medical Center and the Motion to Stay and to Compel Arbitration [24] filed by Defendant Quorum Health Resources, LLC. Having considered the parties' submissions, relevant legal authorities, and the record, the Court is of the opinion that the Motion to Stay and to Compel Arbitration [24] should be granted, and Plaintiff Hancock Medical Center must submit its claims to arbitration. This matter should be stayed pending the arbitrator's resolution of arbitrability. The Motion for Partial Summary Judgment [14] should be denied as moot.

I. BACKGROUND

According to J. Larry Ladner, the President of the Board of Trustees of Plaintiff Hancock Medical Center ("HMC"), HMC is a community hospital organized under and subject to Mississippi Code Sections 41-13-10 through -53, the statutes regulating community hospitals operating in the State of Mississippi. Decl. of J.

1

Larry Ladner ("Ladner Decl.") ¶¶ 3, 6 [14-1, 1-2 of 67]. In 2001, HMC entered into an agreement with Defendant Quorum Health Resources, LLC ("Quorum"), to provide administrative services to HMC (the "2001 Agreement"). Ladner Decl. ¶ 8 [14-1, 2 of 67]. These administrative services included providing HMC with "special employees," such as HMC's chief executive officer and chief financial officer, "to oversee the execution and performance of the administrative functions" of HMC, preparing and submitting for approval a "management services plan . . . designed to implement the goals and objectives of" HMC, and furnishing "consulting services" to HMC. 2001 Agreement ¶¶ 2.1-2.2, 3.3, 3.6 [14-1, 7-11 of 67]. The 2001 Agreement carried an initial term of five years commencing July 1, 2001, and terminating June 30, 2006, with automatic renewals for successive five year periods unless terminated. 2001 Agreement ¶ 8.1 [14-1, 18 of 67]. The 2001 Agreement did not contain an arbitration provision. *See generally* 2001 Agreement [14-1, 6-24 of 67].

In January 2012, Quorum and HMC entered into a second Agreement for Hospital Administrative Services (the "2012 Agreement"). Ladner Decl. ¶ 9 [14-1, 2 of 67]. According to HMC, because the 2012 Agreement had an "effective date" of January 1, 2012, the 2012 Agreement did not constitute a continuation of the 2001 Agreement. Opp'n to Mot. to Stay and to Compel Arbitration 16 [31]. The 2012 Agreement set forth provisions requiring Quorum to supply administrative services similar to those Quorum had been responsible for furnishing to HMC under the 2001 Agreement, and also included a provision addressing alternative dispute

2

resolution (the "Arbitration Provision").  2012 Agreement ¶ 8.1 [14-1, 43 of 67].  The Arbitration Provision stated in pertinent part that

> [a]ny controversy or claim arising out of or relating to this Agreement, or the breach, termination or validity thereof, shall be determined by binding arbitration in Hancock County, Mississippi in accordance with the provisions of this Article VIII and the arbitration rules of the American Health Lawyers Association Dispute Resolution Service . . . .

2012 Agreement ¶ 8.1 [14-1, 43 of 67].  The Arbitration Provision also included a clause providing that "[t]he arbitrator shall have the exclusive authority to decide the scope of issues to be arbitrated."  2012 Agreement ¶ 8.4 [14-1, 44 of 67].

HMC terminated the 2012 Agreement on September 4, 2013, due to Quorum's alleged "breaches of material terms and obligations of the 2012 Agreement."  Ladner Decl. ¶ 10 [14-1, 2 of 67].  HMC filed the Complaint [1] in this case on February 18, 2014, followed by an Amended Complaint [7] on February 26, 2014.  The Amended Complaint advances claims for breach of contract, breach of the covenant of good faith and fair dealing, negligence, breach of fiduciary duty, and corporate waste.  Am. Compl. 20-25 [7].  HMC seeks a declaratory judgment declaring that certain provisions of the 2001 Agreement and the 2012 Agreement, including the Arbitration Provision, are void and unenforceable.  *Id*. at 25-27.  HMC has filed a Motion for Partial Summary Judgment seeking partial summary judgment as to its request for a declaratory judgment.  Mem. in Supp. of Mot. for Partial Summ. J. 7-21 [15].  Quorum opposes HMC's Motion [14] and has moved to stay the case and compel arbitration of the disputes between HMC and Quorum.  Mot. to Stay Case and Mot. to Compel Arbitration 1-7 [24].

II. DISCUSSION

A. Legal Standard

The Federal Arbitration Act, 9 U.S.C. §§ 1 to 16 ("FAA"), provides that a written agreement to arbitrate contained in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[1] 9 U.S.C. § 2. Section 2 of the FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage" of the FAA. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [Section] 2." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (citation omitted).

Section 4 of the FAA provides for entry of an order compelling arbitration where one party has failed, neglected, or refused to comply with an arbitration agreement. Under section 4,

> if a party to an agreement refuses to arbitrate, the opposing party may bring an action to compel arbitration, and after hearing the parties[,] the court "being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," shall direct the parties to arbitrate. Further, § 4 declares that "[i]f the making of the arbitration agreement or the failure . . . to perform the same be in issue, the court shall proceed summarily to the trial thereof."

*Bhatia v. Johnston*, 818 F.2d 418, 421 (5th Cir. 1987) (quoting 9 U.S.C. § 4).

---

[1] The parties do not appear to dispute whether either the 2001 Agreement or the 2012 Agreement involved interstate commerce. *Compare* Mot. to Stay and to Compel Arbitration 4-5 [24] *with* Opp'n to Mot. to Stay and to Compel Arbitration 6-19 [31].

4

The Court must first determine whether, pursuant to section 4, the parties agreed to arbitrate the dispute in question. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (citation omitted). If the Court so finds, it must then determine "whether any federal statute or policy renders the claims non-arbitrable."[2] *Holmes v. Air Liquide USA, L.L.C.*, 498 F. App'x 405, 406 (5th Cir. 2012) (quoting *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004)).

B.    Analysis

"[A]rbitration is a matter of contract . . . ." *AT & T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (citation and internal marks omitted). The question of whether the parties agreed to arbitrate involves two considerations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 396 (5th Cir. 2006) (citation omitted). The "strong federal policy favoring arbitration . . . does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (internal quotations and citation omitted). That determination is controlled by state contract law. *Webb*, 89 F.3d at 258 ("When deciding whether the parties agreed to arbitrate the dispute in question, courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

---

[2] The parties' submissions reveal that the issue of "whether any federal statute or policy renders the claims non-arbitrable" is not in dispute. Thus, the Court need not address this question. *Compare* Mem. Br. in Supp. of Mot. to Stay and Mot. to Compel Arbitration 14-15 [25] *with* Opp'n to Mot. to Stay and to Compel Arbitration 6-19 [31].

5

In seeking to avoid arbitration, HMC contends that it was without authority to bind itself to arbitration because Mississippi governmental entities such as HMC "have only those powers to enter into contractual agreements that are expressly granted to them by the Mississippi legislature, or necessarily implied in their grant of authority." Opp'n to Mot. to Stay and to Compel Arbitration 6 [31]. HMC also argues that "[t]he Mississippi legislature has set forth by statute, specific, limited areas in which governmental entities may agree to binding arbitration[,]" and "[t]hese specific areas are narrowly tailored to construction, repair and engineering agreements to build or repair buildings and roads." *Id.* at 7. Applying the rule of statutory construction which provides that "where a statute enumerates and specifies the subjects of things upon which it is to operate, it is so construed as excluding from its effect all those not expressly mentioned[,]"[3] HMC reasons that "there is no legislative authorization for the arbitration provisions" contained in the 2012 Agreement. *Id.* HMC supports its argument with citation to opinions of the Mississippi Attorney General and concludes that the Arbitration Provision in the 2012 Agreement is ultra vires and thus unenforceable. *Id.* at 7-8.

    1.    <u>There Is a Valid Agreement to Arbitrate Between the Parties</u>

    a.    <u>HMC Was Authorized to Enter Into the Arbitration Provision</u>

"[A]ny public entity[] has only those powers expressly provided by statute and those which are vested by necessary implication." *Smith v. Dorsey*, 599 So. 2d 529, 535 (Miss. 1992). "Necessary implication" refers "to a logical necessity and

---

[3] This rule is referred to as the legal maxim "*expressio unius est exclusion alterius.*" *See* Black's Law Dictionary 1717 (8th ed. 2004). The Court will occasionally refer to the rule as the "*expressio unius* maxim."

6

means that no other interpretation is permitted by the words of the instrument construed, and it has been defined as an implication which yields so strong a probability of intent that any intention to the contrary cannot be supposed leaving no room for doubt." *Clancy's Lawn Care & Landscaping, Inc. v. Mississippi State Bd. of Contractors*, 707 So. 2d 1080, 1083 (Miss. 1997) (citing *Mississippi Pub. Serv. Comm'n v. Columbus & Greenville Ry. Co.*, 573 So. 2d 1343, 1346 (Miss. 1990)).

In resolving a dispute over the Mississippi State Board of Contractors' ("MSBC") authority to determine whether mowing or litter removal required a certificate of responsibility issued by the MSBC, the Mississippi Supreme Court found that the MSBC had implied authority to make such a determination. *Clancy's Lawn Care*, 707 So. 2d at 1084. According to the Court,

> if [Mississippi Code sections 31-3-13(f) and (g)] expressly grant[] the [MSBC] the authority to set forth the requirements for a certificate of responsibility and [to] classify the kind of works that a contractor can perform under its certificate of responsibility, then it should be "necessarily implied", and a "logical necessity", that the Board also have the authority to determine what types of work require a contractor to obtain a certificate of responsibility.

*Id*.

Similar to the statutes governing the MSBC, the statutory provisions governing community hospitals such as HMC support a finding that HMC was impliedly authorized to contract for arbitration. Boards of community hospitals in Mississippi are afforded authority to enter into contracts related to the provision of services at the hospital.

> The power of the board of trustees [of a community hospital] shall specifically include, *but not be limited to*, the following authority: . . .

7

> \* \* \*
> To contract . . . with . . . any individual, partnership, [or] corporation . . . for the providing of . . . services . . . to the community hospital . . . or regarding any facet of the . . . management[] . . . or operation of the community hospital . . . or any related activity . . . .

Miss. Code. § 41-13-35(5)(g) (emphasis added). This broad right to contract is complemented by the right "to defend and/or settle claims against the community hospital . . . ." *Id.* § 41-13-35(5)(h). The Court is of the opinion that similar to the reasoning of the Supreme Court in *Clancy's Lawn Care*, if community hospital boards are authorized to enter into contracts regarding the provision of services to the hospital, the operation of the hospital, or any related activity, and to settle claims against the hospital, then as a "logical necessity," such boards would be impliedly authorized, as part of the authority to contract, to contract to arbitrate disputes involving the community hospital. *See* 707 So. 2d at 1084.

Other sections within the "four corners of the statute under which [community hospitals] operate[]" yield additional support for a finding that community hospitals are impliedly authorized to enter arbitration agreements, and that this authorization is not inconsistent with the statutes under which community hospitals operate. *See id.* at 1083. Decisions of a board of trustees of a community hospital "shall be valid and binding unless expressly prohibited by applicable statutory or constitutional provisions." Miss. Code. § 41-13-35(4). While the community hospital regulations contained in sections 41-13-10 through -53 of the

8

Mississippi Code set forth a number of express prohibitions,[4] they do not include an express prohibition against a community hospital contracting to arbitrate disputes.[5] That the Mississippi legislature has in some cases specifically prohibited, and in others mandated, certain provisions in contracts involving community hospitals, but neither prohibited nor mandated the inclusion of arbitration provisions, further militates in favor of finding that boards of community hospitals are impliedly authorized to agree to arbitrate disputes. *See, e.g.*, Miss. Code § 41-13-24 (providing that counties which have created a community hospital are authorized to contract with private lenders for interim financing but such contracts "shall not require payment of interest . . . greater than that rate of interest authorized for interim financing by . . . counties, municipalities or political subdivisions"); Miss. Code § 41-13-38(1) (providing that loan agreements between a community hospital and a physician, employee, or student pursuant to Section 41-13-35 must contain a provision requiring that the loan be repaid within ten years). Based on the "four corners" of the statute governing community hospitals in the State of Mississippi,

---

[4] *See, e.g.*, Miss. Code § 41-13-29(4) (prohibiting boards of trustees of community hospitals owned and operated by counties in a specific land area within Mississippi from leasing or selling "the community hospital property under its jurisdiction unless the board of supervisors of the county calls for an election on the proposition and a majority" of voters approve the lease or sale); Miss. Code § 41-13-35(6) (prohibiting the "board of trustees of any community hospital" from accepting "any grant of money or other thing of value from any not-for-profit or for-profit organization established for the purpose of supporting health care in the area served by the facility unless two-thirds . . . of the trustees vote to accept the grant"); Miss. Code § 41-13-35(7) (prohibiting a "board of trustees, individual trustee or any . . . agent or servant of the trustees" from having "any personal financial interest in any not-for-profit or for-profit organization which . . . provides . . . grants of money or property to community hospitals or provides services to community hospitals"); Miss. Code § 41-13-36(1) (providing that "[a] board of trustees may enter into a contract of employment with an administrator[]" but expressly prohibiting such contracts from exceeding a five year duration).

[5] *Compare* Miss. Code § 83-11-109 (providing that binding arbitration provisions are prohibited in automobile insurance policies issued in the State of Mississippi).

9

the Court finds that HMC was impliedly authorized to agree to the Arbitration Provision.

  b. <u>HMC Has Not Carried Its Burden of Establishing that the Arbitration Provision is Invalid</u>

A party opposing arbitration has the burden of demonstrating that the agreement to arbitrate is invalid. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)). Only going so far as to use a footnote to address the issue of whether HMC is impliedly authorized by Mississippi Code §§ 41-13-10 through -53 to agree to arbitrate, HMC's primary argument for invalidating the arbitration provision is predicated upon a sweeping application of the *expressio unius* maxim arising from HMC's reading of the Mississippi Construction Arbitration Act, Mississippi Code §§ 11-15-101 through -143, and four legal opinions issued by the Attorney General of the State of Mississippi.[6]

To the extent that HMC contends Sections 11-15-101 and -103 set forth "narrowly limited" and "specific areas" in which governmental entities can agree to arbitrate, HMC's position is unpersuasive. As an initial matter, a reading of the Mississippi Construction Arbitration Act does not indicate that the Act is meant to provide specific, limited areas in which community hospitals or other governmental entities may agree to arbitrate. *See generally* Miss. Code §§ 11-15-101 through -

---

[6] HMC also cites Mississippi Code § 65-2-1 (creating the State Transportation Arbitration Board which has jurisdiction over disputes between contractors and the Mississippi Transportation Board which have an amount in controversy not exceeding $750,000.00), and § 21-27-29 (mandating that "[a]ny dispute between a municipally-owned or operated public utility and a customer of such public utility" regarding billing or services exceeding $2,500.00 be subjected to investigation, review and arbitration by the Mississippi Public Service Commission).

10

143.  In a case involving the issue of whether there was a waiver of an arbitration provision in a county school board's contract with a construction contractor, the Mississippi Supreme Court did not reference or otherwise apply Sections 11-15-101 through -143 as mandating the specific areas in, or procedure by which, the county school board could agree to arbitrate, and even found that the statutory waiver provision in Section 11-15-103 was not the exclusive means by which the right to compel arbitration could be waived.  *See Scott Addison Const., Inc. v. Lauderdale Cnty. School Sys.*, 789 So. 2d 771, 774-75 (Miss. 2001).  Moreover, Section 41-13-35 contains no indication that a community hospital's authority to contract is controlled or limited by the terms of the Construction Arbitration Act.  *See* Miss. Code §§ 41-13-10 through -53.  The fact that statutory provisions governing unrelated, different forms of governmental entities specifically mandate arbitration of certain disputes is not dispositive of the question whether community hospitals can agree to arbitrate disputes.  HMC's argument overlooks the broad statutory authority to contract afforded to boards of community hospitals and the fact that decisions of such boards "shall be valid and binding unless expressly prohibited . . . ."  Miss. Code § 41-13-35(4), (5)(g).

Insofar as HMC relies upon legal opinions issued by the Mississippi Attorney General, these opinions are not binding on the Court.  "An Attorney General's Opinion is merely persuasive authority . . . ."  *Mississippi State & Sch. Employees' Life & Health Plan v. KCC, Inc.*, 108 So. 3d 932, 938 (Miss. 2013) (citing *Pratt v. Gulfport-Biloxi Reg'l Airport Auth.*, 97 So. 3d 68, 75 n.4 (Miss. 2012)).  HMC does

not attempt to reconcile the narrow exclusion contained in these Attorney General opinions with the growing number of cases consistently rejecting the use of state law doctrines of general applicability in a manner which singles out arbitration provisions. *See, e.g.*, *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 167 (5th Cir. 2004) ("Even when using doctrines of general applicability, state courts are not permitted to employ those general doctrines in ways that subject arbitration clauses to special scrutiny."); *Saturn Distrib. Corp. v. Paramount Saturn, Ltd.*, 326 F.3d 684, 687 (5th Cir. 2003) ("[T]he strong federal policy favoring arbitration preempts state laws that act to limit the availability of arbitration.") (citing *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984)).

Any persuasive value of these Attorney General opinions is further diminished by the fact that during the same time period the opinions relied upon by HMC were issued, the Mississippi Attorney General has also expounded upon the "broad authority" afforded to boards of community hospitals with respect to the right to contract and to govern a hospital's affairs. *See, e.g.*, Op. Miss. Att'y Gen. 2004-0001, 2004 WL 555108 *1-2 (Feb. 6, 2004) (noting that "[u]nlike counties and municipalities that have limited statutory authority to contract for collection of 'delinquent' accounts . . . Section 41-13-35 grants" boards of community hospitals "broad authority to enter into contracts and make other decisions 'unless expressly prohibited by applicable statutory or constitutional prohibitions'") (citation omitted); Op. Miss. Att'y Gen. 1993-0274, 1993 WL 207355, *1 (May 12, 1993) ("Section 41-13-35 . . . gives the board of trustees of a community hospital broad authority in

12

governing the affairs of the hospital . . . ."). In sum, the Court is not persuaded by HMC's reliance on the Mississippi Attorney General's opinions it cites to establish that HMC lacked authority to agree to arbitrate disputes. HMC has not carried its burden of establishing that the Arbitration Provision is invalid on the basis that HMC lacked authority to agree to arbitrate.

> 2. The Dispute in Question Falls Within the Scope of the Arbitration Provision

Quorum contends that each of HMC's claims, "at least in part, 'arise[s] out of or relat[es] to" the 2012 Agreement "'or the breach, termination or validity thereof' and as such fall[] squarely within the" Arbitration Provision in the 2012 Agreement. Mem. Br. in Supp. of Mot. to Stay and Mot. to Compel Arbitration 12 [25]. HMC cites *B.G. Rogers Poultry, Inc. v. Wedgeworth*, a Mississippi Supreme Court case, for the proposition that HMC cannot be compelled to arbitrate disputes arising prior to the 2012 Agreement because nothing in the 2012 Agreement makes the Arbitration Provision apply retroactively to the 2001 Agreement. Opp'n to Mot. to Stay and to Compel Arbitration 16-17 [31] (citing 911 So. 2d 483, 489-90 (Miss. 2005)). In a footnote, HMC also appears to challenge the clause delegating to the arbitrator exclusive authority to decide the scope of issues to be arbitrated. *See id.* at 19 n.13. According to Quorum, HMC does not offer a specific or independent basis for its purported challenge to the delegation clause, such that the issue of arbitrability must be resolved by the arbitrator rather than the Court. Rebuttal 9-11 [33].

A delegation clause "is an agreement to arbitrate threshold issues concerning [an] arbitration agreement[]" including the issue of "whether [an] agreement covers

13

a particularly controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (citations omitted). The Arbitration Provision's delegation clause reads as follows:

> **8.4** <u>**Authority of Arbitrator**</u>. The arbitrator shall have the exclusive authority to decide the scope of issues to be arbitrated. Any challenge to the arbitrability of any issue related in any way to the matters or claims in dispute between the Parties shall be determined solely by the arbitrator. Also, any challenge to the validity of this arbitration provision, or any subpart thereof, shall be determined and decided exclusively by the arbitrator.

2012 Agreement ¶ 8.4 [24-1, 34 of 60]. This provision "clearly and unmistakably" reflects an agreement between HMC and Quorum to arbitrate whether a particular claim is subject to arbitration. *See Allen v. Regions Bank*, 389 F. App'x 441, 446 (5th Cir. 2010) (finding that delegation clause in arbitration agreement "unmistakably commands that disputes as to its applicability are for the arbitrator" where provision stated that "[a]ny dispute regarding whether a particular controversy is subject to arbitration . . . shall be decided by the arbitrator(s)" and thus parties agreed to arbitrate arbitrability).

However, "[t]he law of [the Fifth C]ircuit does not require all claims to be sent to gateway arbitration merely because there is a delegation [clause]." *Douglas v. Regions Bank*, 757 F.3d 460, 462 (5th Cir. 2014). There must at least be "plausible arguments that the dispute [is] covered by the agreement as well as plausible arguments that it [is] not." *Id.* (citing *Agere Sys., Inc. v. Samsung Electronics Co.*, 560 F.3d 337, 340 (5th Cir. 2014)). With the foregoing in mind, the Court finds that the delegation clause here requires that the dispute between HMC and Quorum

over what claims fall within the scope of the Arbitration Provision must be resolved by the arbitrator.

On the one hand, Quorum relies upon Fifth Circuit precedent stating that arbitration clauses which require arbitration of any disputes "relating to" an agreement are "[b]road arbitration clauses . . . [which] are not limited to claims that literally 'arise under the contract,' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998). On the other hand, HMC argues that any disputes related to the 2001 Agreement are not within the scope of the Arbitration Provision and any conclusion to the contrary results from an impermissible, retroactive application of the Arbitration Provision.[7] *See Wedgeworth*, 911 So. 2d at 489-90. Because the Amended Complaint [7] includes allegations about conduct occurring prior to the 2012 Agreement but continuing with the services provided by Quorum pursuant to the 2012 Agreement, and conduct occurring after the 2012 Agreement, the Court finds the arguments offered by both HMC and Quorum are

---

[7] The arbitration provision at issue in *Wedgeworth* differed from the Arbitration Provision in the 2012 Agreement because it only required arbitration of "all disputes or controversies arising under this agreement . . . ." 911 So. 2d at 485. Additionally, one of the two cases upon which the Mississippi Supreme Court primarily relied in *Wedgeworth* might have concluded differently as to the scope of the arbitration provision had the provision also stated that it applied to disputes "relating to" the particular agreement containing the arbitration provision. *See Coffman v. Provost Umphrey Law Firm, L.L.P.*, 161 F. Supp. 2d 720, 725-26 (E.D. Tex. 2001) *aff'd sub nom. Coffman v. Provost Umphrey LLP*, 33 F. App'x 705 (5th Cir. 2002). In *Coffman*, the provision required binding arbitration of "any dispute or claim arising under this . . . agreement." *Id.* at 723. In explaining that the arbitration provision was a narrow one "only requiring the arbitration of . . . claims which literally arise under the contract[,]" the Court noted that "this arbitration clause does not contain the broader terms 'in connection with' or 'relating to,' which, according to the Fifth Circuit, distinguish a broad arbitration clause from a narrow clause which uses only the term 'arising out of' or 'arising under' the agreement." *Id.* at 725.

plausible in that each represents a legitimate ground for finding that the Arbitration Provision may or may not cover some of the disputes between HMC and Quorum. Quorum's assertion of arbitrability is not wholly groundless, and the Court will enforce the delegation clause between HMC and Quorum. *See Douglas*, 757 F.3d at 463-64 (noting that once a court finds the parties unmistakably intended to delegate the power to decide arbitrability to the arbitrator(s), the key inquiry is whether "the assertion of arbitrability [is] wholly groundless").

To the extent HMC may have attempted to raise a specific challenge to the delegation clause, this challenge is insufficient. "[C]ourts must enforce [delegation clauses] unless the party resisting arbitration challenges the delegation [clause] itself specifically . . . ." *Aviles v. Russell Stover Candies, Inc.*, 559 F. App'x 413, 415 (5th Cir. 2014) (citing *Rent-A-Center*, 561 U.S. at 68-73); *see also Hawkins v. Region's*, 944 F. Supp. 2d 528, 530 (N.D. Miss. 2013) (noting that the Supreme Court's *Jackson* decision "appears to place a heavy burden on [parties opposing arbitration] to make challenges which are tailored specifically to arbitration delegation clauses within contracts, rather than to the contract as a whole or even to arbitration clauses within those contracts"). A plain reading of HMC's Opposition to Quorum's Motion [24] reveals that HMC's challenge to the Arbitration Provision based on its alleged lack of authority to agree to arbitrate goes to the validity of the Arbitration Provision as a whole. To the extent HMC asserts that the Supreme Court's *Rent-A-Center* decision renders the delegation clause unenforceable, this argument is not persuasive. *See Aviles*, 559 F. App'x at 415

(finding delegation clause was enforceable where party seeking to avoid arbitration contended that "her agreement to arbitrate is illusory, and therefore unenforceable" but did "not challenge the delegation [clause] itself specifically"). Accordingly, the Court finds that the delegation clause requires that the dispute as to what claims are included within the scope of the Arbitration Provision must be determined by the arbitrator.

### III. CONCLUSION

Based on the foregoing, the Court concludes that the Arbitration Provision is enforceable against HMC. Quorum's Motion [24] should be granted.

**IT IS**, **THEREFORE**, **ORDERED AND ADJUDGED** that Defendant Quorum Health Resources, LLC's Motion to Stay and Motion to Compel Arbitration [24] is **GRANTED**, and the parties in this action are to submit the disputed matters to arbitration.

**IT IS**, **FURTHER**, **ORDERED AND ADJUDGED** that Plaintiff Hancock Medical Center's Motion for Partial Summary Judgment [14] is **DENIED AS MOOT**.

**IT IS**, **FURTHER**, **ORDERED AND ADJUDGED** that this case is **STAYED** pursuant to 9 U.S.C. § 3, pending a ruling on arbitrability from the arbitrator.  If the arbitrator should conclude that any part of the instant case is not arbitrable, then any party may move to lift the stay to that extent upon conclusion of the arbitration, and the case will proceed in this Court.

**SO ORDERED AND ADJUDGED**, this the 25th day of March, 2015.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE